## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| JORDAN ROSENBLATT, Individually and On Behalf of All Others Similarly Situated, | ) ) ) |
| Plaintiff, | ) Case No. _____ ) |
| v. | ) JURY TRIAL DEMANDED ) |
| EL PASO ELECTRIC COMPANY, CHARLES A. YAMARONE, EDWARD ESCUDERO, PAUL M. BARBAS, JAMES W. CICCONI, MARY E. KIPP, RAYMOND PALACIOS, JR., ERIC B. SIEGEL, STEPHEN N. WERTHEIMER, SUN JUPITER HOLDINGS LLC, and SUN MERGER SUB INC., | ) CLASS ACTION ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

## COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1.     This action stems from a proposed transaction announced on June 3, 2019 (the "Proposed Transaction"), pursuant to which El Paso Electric Company ("El Paso" or the "Company") will be acquired by Sun Jupiter Holdings LLC ("Parent"), a Delaware limited liability company, and Sun Merger Sub Inc. ("Merger Sub," and collectively with Parent, "Sun").

2.     On June 1, 2019, El Paso's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with Sun.  Pursuant to the terms of the Merger Agreement, Sun's stockholders will receive $68.25 in cash for each share of El Paso common stock they own.

3.     On July 16, 2019, defendants filed a proxy statement (the "Proxy Statement") with the United States Securities and Exchange Commission (the "SEC") in connection with the Proposed Transaction.

4.     The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading.   Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy Statement.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6.     This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.     Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8.     Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of El Paso common stock.

9.     Defendant El Paso is a Texas corporation and a party to the Merger Agreement.  El Paso's common stock is traded on the New York Stock Exchange under the ticker symbol "EE."

10.     Defendant Charles A. Yamarone is Chairman of the Board of the Company.

11.     Defendant Edward Escudero is Vice Chairman of the Board of the Company.

12.     Defendant Paul M. Barbas is a director of the Company.

13.     Defendant James W. Cicconi is a director of the Company.

14.     Defendant Mary E. Kipp is President, Chief Executive Officer, and a director of the Company.

15.     Defendant Raymond Palacios, Jr. is a director of the Company.

16.     Defendant Eric B. Siegel is a director of the Company.

17.     Defendant Stephen N. Wertheimer is a director of the Company.

18.     The defendants identified in paragraphs 10 through 17 are collectively referred to herein as the "Individual Defendants."

19.     Defendant Parent is a Delaware limited liability company and a party to the Merger Agreement.

20.     Defendant Merger Sub is a wholly-owned subsidiary of Parent and a party to the Merger Agreement.

## CLASS ACTION ALLEGATIONS

21.     Plaintiff brings this action as a class action on behalf of himself and the other public stockholders of El Paso (the "Class").  Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

22.     This action is properly maintainable as a class action.

23.     The Class is so numerous that joinder of all members is impracticable.  As of May 31, 2019, there were approximately 64,281,761 shares of El Paso common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

24.     Questions of law and fact are common to the Class, including, among others, whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

25.     Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature.  Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

26.     The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

27.     Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class.  Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

### *Background of the Company and the Proposed Transaction*

28.     El Paso is an electric utility that provides generation, transmission, and distribution service to approximately 428,000 retail and wholesale customers in a 10,000 square mile area of the Rio Grande valley in west Texas and southern New Mexico.

29.     On June 1, 2019, El Paso's Board caused the Company to enter into the Merger Agreement with Sun.

30.     Pursuant to the terms of the Merger Agreement, El Paso's stockholders will receive

$68.25 in cash for each share of El Paso common stock they own.

31.     According to the press release announcing the Proposed Transaction:

El Paso Electric Company (EPE) (NYSE: EE) and the Infrastructure Investments
Fund, an investment vehicle advised by J.P. Morgan Investment Management Inc.
(IIF), today announced that they have entered into a definitive agreement under
which IIF will purchase EPE for $68.25 in cash per share representing an enterprise
value of approximately $4.3 billion. . . .

Agreement Details

IIF will purchase EPE for $68.25 per share in cash representing an enterprise value
of approximately $4.3 billion, including EPE's net debt. The per share purchase
price represents a 17% premium to EPE's closing price on May 31, 2019, the last
trading day prior to the announcement of the agreement.

The agreement has been unanimously approved by EPE's Board of Directors and
is expected to close in the first half of 2020, subject to the approval of EPE's
shareholders, the receipt of regulatory approvals and other customary closing
conditions.

Dividends payable to EPE shareholders will continue in the ordinary course through
the closing.

Advisors

Lazard is serving as financial advisor and Baker Botts L.L.P. is acting as legal
advisor to EPE.

BofA Merrill Lynch is acting as exclusive financial advisor and Skadden, Arps,
Slate, Meagher & Flom LLP is acting as legal advisor to IIF. In addition, IIF has a
committed bridge financing facility in place led by BofA Merrill Lynch to support
the transaction.

32.     The Merger Agreement contains a "no solicitation" provision that prohibits the

Individual Defendants from soliciting alternative proposals and severely constrains their ability to

communicate and negotiate with potential buyers who wish to submit or have submitted

unsolicited alternative proposals.  Section 5.03(a) of the Merger Agreement provides:

The Company shall not, and shall not authorize any of its Affiliates or any of its and their respective officers, directors, principals, partners, managers, members, attorneys, accountants, agents, employees, consultants, financial advisors or other authorized representatives (collectively, "Representatives") to (i) directly or indirectly solicit, initiate or knowingly encourage, induce or facilitate any Company Takeover Proposal or any inquiry or proposal that would reasonably be expected to lead to a Company Takeover Proposal, in each case, except for this Agreement and the transactions contemplated hereby, or (ii) directly or indirectly participate in any discussions or negotiations with any Person (except between the Company's Affiliates and its and their respective Representatives and Parent and Parent's Affiliates and its and their respective Representatives with respect to the transactions contemplated by this Agreement) regarding, or furnish to any such Person, any nonpublic information with respect to, or cooperate in any way with any such Person with respect to, any Company Takeover Proposal or any inquiry or proposal that would reasonably be expected to lead to a Company Takeover Proposal.  The Company shall, and shall cause its Affiliates and its and their respective Representatives to, immediately cease and cause to be terminated all existing discussions or negotiations with any Person (except between the Company's Affiliates and its and their respective Representatives and Parent and Parent's Affiliates and its and their respective Representatives with respect to the transactions contemplated by this Agreement) with respect to any Company Takeover Proposal or any inquiry or proposal that would reasonably be expected to lead to a Company Takeover Proposal, request the prompt return or destruction of all confidential information previously furnished and immediately terminate all physical and electronic data room access previously granted to any such Person or its Representatives. . . .

33.     Additionally, the Company must promptly advise Sun of any proposals or inquiries received from other parties.  Section 5.03(d) of the Merger Agreement states:

The Company shall promptly (and in any event no later than twenty-four (24) hours after receipt) advise Parent orally and in writing of any Company Takeover Proposal, the material terms and conditions of any such Company Takeover Proposal and the identity of the Person making any such Company Takeover Proposal.  The Company shall keep Parent reasonably informed in all material respects on a reasonably current basis (and in any event no later than the later of (i) twenty-four (24) hours or (ii) 5:00 p.m. New York City time on the next Business Day) of the material terms and status (including any change to the terms thereof) of any Company Takeover Proposal.  Without limiting the foregoing, the Company shall notify Parent in writing promptly (and in any event within twenty-four (24) hours) after it determines to begin providing information or to engage in discussions or negotiations concerning a Company Takeover Proposal.

34.     Moreover, the Merger Agreement contains a "fiduciary out" provision permitting the Board to change its recommendation of the Proposed Transaction under extremely limited circumstances, and grants Sun a "matching right" with respect to any "Superior Proposal" made to the Company.  Section 5.03(c) of the Merger Agreement provides:

> Notwithstanding anything to the contrary herein, at any time prior to obtaining the Company Shareholder Approval, the Company Board may make a Company Adverse Recommendation Change if (i) a Company Intervening Event has occurred or (ii) the Company has received a Superior Company Proposal that does not result from a breach (other than an immaterial breach) of Section 5.03 and, in each case, if the Company Board determines in good faith (after consultation with outside legal counsel and a nationally recognized financial advisor) that the failure to effect a Company Adverse Recommendation Change as a result of the occurrence of such Company Intervening Event or in response to the receipt of such Superior Company Proposal, as the case may be, would reasonably likely be inconsistent with the Company Board's fiduciary duties under applicable Law; provided, however, that the Company Board may not make such Company Adverse Recommendation Change unless (1) the Company Board has provided prior written notice to Parent (a "Company Recommendation Change Notice") that it is prepared to effect a Company Adverse Recommendation Change at least three (3) Business Days prior to taking such action, which notice shall specify the basis for such Company Adverse Recommendation Change and, in the case of a Superior Company Proposal, attaching the most current draft of any Company Acquisition Agreement with respect to such Superior Company Proposal or, if no draft exists, a summary of the material terms and conditions of such Superior Company Proposal (it being understood that such Company Recommendation Change Notice shall not in itself be deemed a Company Adverse Recommendation Change and that if there has been any subsequent material revision or amendment to the terms of a Superior Company Proposal, a new notice to which the provisions of clauses (2), (3) and (4) of this Section 5.03(c) shall apply mutatis mutandis except that, in the case of such a new notice, all references to three (3) Business Days in this Section 5.03(c) shall be deemed to be two (2) Business Days), (2) during the three (3) Business Day period after delivery of the Company Recommendation Change Notice, the Company and its Representatives negotiate in good faith with Parent and its Representatives regarding any revisions to this Agreement that Parent proposes to make as would permit the Company Board in the exercise of its fiduciary duties not to effect a Company Adverse Recommendation Change, and (3) at the end of such three (3) Business Day period and taking into account any changes to the terms of this Agreement committed to in writing by Parent, the Company Board determines in good faith (after consultation with outside legal counsel and a nationally recognized financial advisor) that the failure to make such a Company Adverse Recommendation Change would reasonably likely be inconsistent with its fiduciary duties under applicable Law, and that, in the case of a Company Adverse

Recommendation Change with respect to a Company Takeover Proposal, such Company Takeover Proposal still constitutes a Superior Company Proposal.

35.     The Merger Agreement also provides for a "termination fee" of $85 million payable by the Company to Sun if the Individual Defendants cause the Company to terminate the Merger Agreement.

***The Proxy Statement Omits Material Information, Rendering It False and Misleading***

36.     Defendants filed the Proxy Statement with the SEC in connection with the Proposed Transaction.

37.     As set forth below, the Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading.

38.     The Proxy Statement omits material information regarding the analyses performed by the Company's financial advisor in connection with the Proposed Transaction, Lazard Frères & Co. LLC ("Lazard").

39.     With respect to Lazard's Discounted Cash Flow Analysis, the Proxy Statement fails to disclose: (i) all line items used to calculate unlevered free cash flow; (ii) the terminal value of the Company; and (iii) the individual numerical inputs and assumptions underlying the discount rates ranging from 4.75% to 5.25%.

40.     With respect to Lazard's Research Analyst Price Targets analysis, the Proxy Statement fails to disclose: (i) the price targets observed by Lazard in the analysis; and (ii) the sources thereof.

41.     With respect to Lazard's Dividend Discount Analysis, the Proxy Statement fails to disclose: (i) the future dividends per share of Company common stock expected to be paid by the Company, as used by Lazard in the analysis; and (ii) the individual inputs and assumptions underlying the discount rate ranging from 5.75% to 6.25% and the dividend growth rate ranging

from 2.00% to 3.00%.

42.     With respect to Lazard's Infrastructure Returns Analysis, the Proxy Statement fails to disclose: (i) Lazard's basis for utilizing exit P/E multiples ranging from 20.0x to 23.0x; and (ii) the individual inputs and assumptions underlying the internal rates of return ranging from 7.0% to 10.0%.

43.     When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

44.     The omission of the above-referenced material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement: (i) Background of the Merger; (ii) Recommendation of the Company's Board of Directors and its Reasons for the Merger; (iii) Opinion of Lazard Frères & Co. LLC; and (iv) Forward-Looking Financial Information.

45.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

## COUNT I

**Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and El Paso**

46.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

47.     The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading.  El Paso is liable as the issuer of these statements.

48.     The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants.  By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

49.     The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

50.     The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction.   In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

51.     The Proxy Statement is an essential link in causing plaintiff and the Company's stockholders to approve the Proposed Transaction.

52.     By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

53.     Because of the false and misleading statements in the Proxy Statement, plaintiff and the Class are threatened with irreparable harm.

## COUNT II

**Claim for Violation of Section 20(a) of the 1934 Act**
**Against the Individual Defendants and Sun**

54.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

55.     The Individual Defendants and Sun acted as controlling persons of SunTrust within the meaning of Section 20(a) of the 1934 Act as alleged herein.  By virtue of their positions as officers and/or directors of El Paso and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement,

they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

56.     Each of the Individual Defendants and Sun was provided with or had unlimited access to copies of the Proxy Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

57.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.  The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction.  They were thus directly involved in the making of the Proxy Statement.

58.     By virtue of the foregoing, the Individual Defendants and Sun violated Section 20(a) of the 1934 Act.

59.     As set forth above, the Individual Defendants and Sun had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act.  As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A.      Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.      In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.      Directing the Individual Defendants to disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.      Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E.      Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues so triable.

Dated: July 23, 2019

**RIGRODSKY & LONG, P.A.**

By:   */s/ Gina M. Serra*
Brian D. Long (#4347)
Gina M. Serra (#5387)
300 Delaware Avenue, Suite 1220
Wilmington, DE 19801
Telephone: (302) 295-5310
Facsimile: (302) 654-7530
Email: bdl@rl-legal.com
Email: gms@rl-legal.com

**OF COUNSEL:**

**RM LAW, P.C.**
Richard A. Maniskas
1055 Westlakes Drive, Suite 300
Berwyn, PA 19312
Telephone: (484) 324-6800
Facsimile: (484) 631-1305
Email: rm@maniskas.com

*Attorneys for Plaintiff*